Mr. Mitchell Thank you, Your Honors, and may it please the Court. In 2019, the State Commission on Judicial Conduct sanctioned Judge Diane Hensley because she recuses herself from officiating at same-sex weddings and politely refers same-sex couples to other nearby wedding officiants who are willing to perform those ceremonies. The Commission found that Judge Hensley violated Canon 4A.1 of the Texas Code of Judicial Conduct, which requires every judge to conduct their extrajudicial activities in a manner that casts doubt on their ability to act impartially as a judge. The Commission brushed aside Judge Hensley's claims that her religious faith prevents her from participating in same-sex marriage ceremonies, and it held that there would be no religious exemptions to this supposed requirement to officiate same-sex marriage ceremonies on the same terms as one officiates weddings between one man and one woman. The Commission's actions against Judge Hensley threaten every judicial officer in the state of Texas with discipline unless they agree to perform same-sex marriages or else cease entirely the performance of weddings. It also threatens every judge in Texas with potential discipline if they publicly express disapproval of same-sex marriage or homosexual conduct, even when those expressions are a reflection of religious practice or belief, which is supposed to be protected by the First Amendment. Judge Umphress is seeking a declaratory judgment of whether the First Amendment protects his right not to officiate at same-sex weddings, as Judge Hensley has done, and he is also seeking a declaration that Canon 4A1 is unconstitutionally vague because it fails to provide fair notice of what is prohibited, and it opens the door to arbitrary and discriminatory enforcement. Why isn't this a perfect case for Pullman abstention? This is an exceptionally poor case for Pullman abstention, Judge Smith, for several reasons. Number one, this is a case that involves the First Amendment, and this Court and the Supreme Court has repeatedly said that Pullman abstention is heavily disfavored in First Amendment cases. The second reason is that the pending... Those were mostly over-breath cases, were they not? Some of them were, some of them weren't. Some of them were facial challenges, some of them were as-applied, but we are bringing a facial challenge to Canon 4A1. Our vagueness claim is explicitly facial. We're seeking an injunction from this Court or from the District Court that would prevent the Commission from enforcing that canon until a narrowing construction is offered. And our First Amendment claim has not yet been pigeonholed in our complaint as facial or as-applied. We have alleged that the Commission is violating the First Amendment, but whether we're entitled to a facial or as-applied remedy comes later at the remedial stage, and it is too early in this lawsuit to foreclose the possibility of facial relief, even though at this point we haven't explicitly asked for that in our complaint. And the Supreme Court's decision in Whole Woman's Health against Hellerstedt and Citizens United makes clear the courts can issue facial relief even when the litigant hasn't expressly pleaded that in his complaint. The second reason that palm abstention would be improper here, Judge Smith, is that the Hensley litigation, which is currently pending in state court, is highly unlikely to yield a definitive ruling on the merits in the manner that would protect Judge Umphress, because first, the case was just decided by the Travis County District Court, and it is on appeal to a regional appellate court in Texas, the Austin Court of Appeals. Judge Umphress is not based in the Austin Appellate Division. He lives in Jack County. So any ruling from the Austin Court of Appeals would not have precedential value in a manner that would protect Judge Umphress. It's possible the state Supreme Court will eventually take this case, but the state Supreme Court has discretionary jurisdiction, just like the Supreme Court of the United States. There's no guarantee they would take the case. There's no requirement that they would take up this case, and even if they did, that is years away. At the same time, there are serious procedural hurdles in Judge Hensley's case that may prevent any court from reaching the merits. The defendants brought to this court's attention the trial court's ruling in Travis County last week, where she dismissed Judge Hensley's claims. She ruled against Judge Hensley because she claimed that her constitutional arguments and her state RFRA claims were barred by res judicata. So she did not even reach the state RFRA question of whether the Religious Freedom Restoration Act in Texas can protect the right of a judge not to officiate at same-sex weddings and to avoid commission discipline if a judge refuses to do so. So it's quite possible that the appellate court will reach a similar conclusion. Of course, for full disclosure, we represent Judge Hensley. We have appealed that ruling, and we think the trial court was wrong. But those issues are there in the case, and there are vehicle problems that may prevent a court from eventually reaching the state law merits that would make the First Amendment claim go away. So for all those reasons— That's what you're asking the court to do, isn't it? Of course. That's what we're asking the court to do. But there's no guarantee we will win. You're just predicting you're going to lose. No, I'm not predicting we're going to lose. So Pullman shouldn't apply? Judge Graves, I'm pointing out we've already lost in the district court. We think the district court was wrong. I understand that. We think the district court was wrong. But you're not telling your client you're pursuing a case vigorously, but you're certain you're going to lose it. We are pursuing the case vigorously. We hope that we will win, but there's no guarantee that the judges will see it our way because the trial judge in Travis County did not. And there's no guarantee that the elected appellate judges in Travis County will see it our way either. And there's no guarantee the state Supreme Court will grant our petition for review if we seek that. We will seek a petition for review if we lose in the third court of appeals. We will certainly pursue this all the way to the state Supreme Court. But we can't force the state Supreme Court to take this case. They have discretionary jurisdiction just like the Supreme Court of the United States. And we advise our client the same way we would advise any other client who wants to take their case to the Supreme Court of the United States. We will try to get you there. But we certainly can't promise or guarantee that. And there's never a guarantee. But the fact is you have litigation pending in state court. We absolutely have litigation pending in state court. We are pursuing it vigorously. But there is no guarantee that this will help Judge Umphress. Because right now we're on appeal to a regional court outside of where Judge Umphress lives. That's our right to appeal. We can take that appeal to the Travis County Appellate Court. We have no right to appeal to the state Supreme Court. Remind me which court of appeals Jack County is in. Jack County is in the, I believe it's in the Fort Worth. It would be Fort Worth. I think it's Fort Worth, yeah. It's certainly in the Fort Worth Federal District. I know that. I think with respect to state court, it would either be in the Fort Worth Appellate Division in state court or it might be in Ambarello. But my co-counsel may know that question, the answer to that question better than I would. So for all those reasons, Pullman abstention would be improper. And on the Article III standing question, which was the initial ruling that the district court made, there are at least three separate independent problems that all, in our view, require reversal. The first problem is that the district court's analysis of Article III standing rests on a false factual premise. The district court says in its opinion that the Commission on Judicial Conduct has promised that it will not discipline Judge Umphress in the future for the conduct that he wants to engage in. And even the defendants agree with us that that was not an accurate description of the evidence the defendants presented to the district court. What the defendants told the district court is that they have not investigated or disciplined Judge Umphress in the past and they are not currently involved in disciplinary proceedings against him. But in no way did they make a commitment to the district court that they would never in the future discipline Judge Umphress for his refusal to officiate at same-sex marriages. The district court said otherwise. The defendants brought this to the district court's attention. After it issued its opinion, the district court dismissed their concerns. But the fact remains the district court did not characterize the record correctly and the defendants and plaintiffs agree on that point. Now, the defendants of course still defend the district court's ultimate conclusion. So I don't want to overstate the amount of agreement between the parties here. But on this issue about what the record reflects, factually, we are in full agreement. The defendants have never made a promise that they will not discipline Judge Umphress in the future for what he is trying to do. And even if they had made such a commitment, that would not defeat Article III standing. Even when a defendant explicitly disclaims a future intent to prosecute, that is not enough to defeat a pre-enforcement challenge if there is still a credible and a substantial fear of future enforcement. And that's the test from Susan B. Anthony, that's the test from Speech First, and it's a test the district court did not apply. The district court made two other errors in its opinion that concern errors of law. First, it said that Judge Umphress was required to allege and show a threat of enforcement directed at him personally. That is not a requirement to bring a pre-enforcement challenge. A plaintiff is never required to show that he specifically has been threatened directly by state officials or by federal officials in a manner that violates his First Amendment rights. It's enough to show that the challenged policy is being forced against other similarly situated people, which then creates a credible or substantial threat of prosecution that might be directed at the plaintiff. But in no way is he required to show that he has been directly or specifically threatened by the defendants that he is suing. That has never been the law in any context, not in the First Amendment context, not outside the First Amendment context. And we've cited numerous authorities in our brief that show this. Doe against Bolton is a great example where the Supreme Court acknowledges in its opinion that the abortion provider plaintiffs were not threatened with prosecution, yet they still had standing to bring a pre-enforcement challenge to the Georgia abortion law. Stenberg against Carhartt is an even stronger example where the abortion providers not only weren't threatened, they were explicitly told by the Attorney General that they would not be prosecuted for performing the type of abortion procedure that they wanted to perform, and the Supreme Court still held, even in that situation, that they had standing to bring a pre-enforcement challenge. The same result should apply here. No way does a plaintiff have to show that he has been specifically threatened by the state authorities. The other problem with the district court's opinion is that it held that Judge Umphress was required to resort to self-censorship and to change his behavior before he can establish Article III injury to bring a pre-enforcement challenge. And that, too, was mistaken. And this court's decision in speech first shows that. The students in that case did not change their behavior. They did not allege that they had self-censored in response to the university's speech codes that they were challenging. They simply said to this court that they were injured by the fear that they might be subject to discipline if they continued with the speech that they wanted to engage in. And this court did not in any way suggest that those students were first required to change their behavior in order to establish Article III injury. The injury comes from the threat. The injury comes from the fear. It doesn't come from the fact that one's behavior has changed in response to a law that one has made unconstitutional. One can continue acting as one did before and still assert standing to bring a pre-enforcement challenge simply based on the credible threat or substantial fear of future— Judge Umphress will be running—he plans to run in the 2022 election? Yes, he is planning to run for election in 2022. And he might face a primary opponent? I don't know whether he will or not, but whether he faces—whether he faces an opponent or not, he still intends to speak on the issue of same-sex marriage and his opposition to Obergefell. And that raises the specter of just how far this impartiality canon goes. It's exceedingly vague. And now that the Commission has used the impartiality canon to go after judges who declined to officiate at same-sex weddings, it raises the question of just— And when you say go after, you're talking about the warning to Judge Hensley? That's correct. She was issued a public warning by the— What else are you talking about? You say they've been going after them for that. What else has happened? To my knowledge, nothing else has happened to Judge Hensley because she has acquiesced and has stopped doing weddings entirely. I thought they actually sanctioned someone. That wasn't in your briefs, but I thought they actually sanctioned— They might have. It's not in the record of the case, Judge Graves, so I want to be careful in answering your question just to make clear. We're still at the motion to dismiss stage. So we have not gotten into discovery. We're just going on the allegations in our complaint. And what we've alleged in our complaint is that they disciplined Judge Hensley. We have not specifically pointed out in our complaint that there has been other discipline. There might have been, but right now at this phase, because that's on the motion to dismiss stage, we're not required to produce evidence that other people are being subject to discipline. But, again, just in all candor to Your Honor's question, I want to be careful not to go outside the record. And right now the record reflects only that there has been action taken against Judge Hensley. And that, in our view, is more than enough to show that Judge Johnforst himself has standing. But to back to Chief Judge Owen's question with respect to Judge Johnforst's planned campaign in 2022, he needs to know what he can say and what he can't say before he starts campaigning because what the commission has done has created a chilling effect, not only with respect to the conduct of officiating at weddings, but also with respect to any speech or exercise of religion that touches on the issue of homosexuality or same-sex marriage. Because what the commission has essentially done is equate opposition to same-sex marriage with something akin to racism, that if you are unwilling to perform marriages between members of the same sex, that you have evinced bias toward that person as a litigant if they appear in your courtroom. And if that is what the commission is going to use in interpreting the impartiality canon, a judge has to know what else he can and can't say on these issues without exposing himself to discipline. And that's exactly why we have declaratory judgments in the first place, is to enable litigants to come into court before they have to expose themselves to discipline and seek a judicial declaration of their rights. That is the office of a declaratory judgment. It's the reason pre-enforcement lawsuits exist, not only in the First Amendment context, but with respect to all constitutional rights. Your time has expired and you've saved some time for rebuttal. Yes, I have. Thank you, Your Honor. That's just a preliminary matter, Court, please. My co-counsel, Ross Rance, is here. He will not argue, but he is a relatively new lawyer and wishes to experience what we're going to do. My name is Doug Lang. I represent the defendants. May it please the Court. Let me address first the abstention issue, since Judge Smith did raise that. There are two primary reasons why abstention is appropriate, Pullman's abstention is appropriate. First of all, the United Home Rentals case from this court in 1983 made it clear that a federal court should abstain when the question is the constitutionality of a regulation of an administrative board in Texas. In that case, of course, it was the Real Estate Licensing Board. The second is that Judge Umphress has piggybacked on Judge Hensley's sanction. He's piggybacked on it. He says his fear is because of that sanction, and I'll get to that in a minute because I fear. In that case, which, as counsel very appropriately pointed out, Judge Seufer, in Travis County, dismissed the case on June 25th, there were a number of reasons that she stated in her order. They weren't just, Estoppel raises you to Cotter. I differ with that because the order is clear. There were two points that are very much like what we're facing here. Lack of ripeness of her constitutional claim, and she sought an impermissible advisory opinion. Now, she made at least two claims in her lawsuit that are right in line with Judge Umphress' claims. She asked for a holding that Canon 4A1 is unconstitutional as to any prospective activity she might engage in, in line with refusing to marry gay couples but actively marrying heterosexual couples. She also asked for an opinion of the court on what she can do. Those two things are exactly in line with the substance of what Judge Umphress is asking for. Let me address the question of where we are. I'm trying to understand regarding the Pullman issue. What specific bearing on the Pullman issue, if any, does the dismissal by one state district judge in another case have on this? I don't find that it's particularly significant, so . . . Let me suggest this as to the significance. They will appeal this to the Third Court of Appeals in Austin. That court will take up the issues, as we know, and two of the issues here are, you know, combined, intertwined with what Judge Umphress is saying. Well, how does that give us a definitive interpretation under state law of this canon? Because the constitutionality of this canon is clearly raised in that case, and the Court of Appeals will make a decision on that. That is one of the major claims that she is making there. Well, Judge Schleifer did not reach the constitutional claim, correct? She said that it was not right. Right. So we don't have a definitive ruling from Judge Schleifer, and let's say the Third Court of Appeals affirms and says she's correct. How is that litigation, unless the Texas Supreme Court weighs in, going to give us a definitive construction of the canon that's at issue? Your Honor, I believe that that does address it. It says that it's not right, and it is not . . . there are no grounds to take it up, just as in the trial court, where the case is not right, but moreover, no injury in fact didn't demonstrate that the canon is invalid, so therefore, no standing. No standing? Well, we might disagree on all those issues with the state court. I thought the Pullman doctrine was the basis that you're going to get a definitive ruling from the state court that may obviate the necessity for a federal court to pass on the constitutionality of the administrative rule. So I'm not hearing from you that we're on that track in the Texas state court. Your Honor, I do believe it will be addressed one way or the other, because the standing issue does address it. That's what we're talking about here today, is the standing issue. Is there an injury in fact? Is this, quote, fear, unquote, that Judge Umphress claims, is it concrete, the risk of concrete harm, or is it mere speculation on the future? We're not bound by what the state courts say on standing, and it has nothing to do with what does the canon mean. Are state courts going to construe it to include this or that? So all I'm hearing from you is we're going to get standing issues resolved. No one's going to talk about what the canon actually means as a matter of state law. That would be an advisory opinion by this court or the state court, because what he is specifically asking for ... Well, that's a decision separate and apart, to me, it seems, from the Pullman abstention doctrine. You keep, seem to be ... Maybe I'm missing something, but you keep blending them. No, no, I'm definitely trying to pinpoint, Your Honor, that I truly believe we're looking at a state court action that has before it the constitutional question. Now what the judges do on the Third Court of Appeals, I can't tell you. I know that that issue was there, and they may say, look, there's no reason in the world I should give you an advisory opinion as Judge Seifried did. So if that happens and there's no Pullman abstention, you should come ... Judge Umphress should come right back to federal court, correct? No, Your Honor, I must disagree. I certainly understand where you're going on this, and the questions that you're asking are very important and intriguing, but I really do think that this constitutionality is there. But to get standing, you've got to address the constitutionality of a claim. And Judge Hensley was trying to do that precise same thing in state court. And for the number of reasons that are itemized in her decision, she can't get there, at least according to Judge Seifer in state court. I still think the constitutional issue is there, and when they are looking at standing, they're going to take up, just as in the case of the June 2021 case decided California versus Texas. The decision was that you have to prove both things. You have to come forward and show injury in fact and in validity to show standing. And the injury in fact is going to be the same for Judge Hensley on the prospective employment or enforcement of Canon 4A1, just as it would be here. So there is, in my view, Your Honor, there is a constitutional issue that will be addressed there. It will be before them. Obviously, I can't tell you what they're going to say. But as to standing, this is not about Obergefell, although Judge Umphress wants to make it about that. He has pled in his complaint in at least two places that he thinks it ought to be reversed by the United States Supreme Court. Is this his vehicle to get before them to make a play on that? Apparently it is. Now, he claims that he will establish this injury in fact by this fear. And the cases are quite clear out there. And they're just, as the Court is aware, a long list of them that say that you can't just speculate and say the hot things in the future that may happen. There has been, there has been no . . . What happened to Judge Hensley with the commission? What happened there? What happened with her was there was a finding. There were five relevant findings. And she was given a public warning, which is in the middle of the three possible sanctions that a judge can get. You can get a reprimand, which is the highest, a public warning, which is in the middle, and a public admonition, which is lower. Or there could be a private sanction. So is the fact that that happened to Judge Hensley relevant or not relevant to this case? Well, it's relevant to the plaintiff, he says, because he fears this and says, I fear that this will happen to me because I am doing things somewhat like what happened to Judge Hensley. So it is relevant? It is relevant to him. We think that it does not pertain because he doesn't have standing because of that claim. And the reason is this. Because the commission, as any adjudicative body, must listen to the facts, must look at the record, and then apply the law of facts. Now, he says what he's going to do is he's going to refuse to marry gay couples, marry heterosexual couples. He's going to campaign about the reversal of the gay marriage decision by the United States Supreme Court. And he belongs to a church. Okay. Those were not the findings, not all of the findings with Judge Hensley. And we have said from the outset that the commission must hear the facts. They do not have a complaint, according to the record, about Judge Umphress. And they don't anticipate at this point going after. Now, I think it's a red herring. So what I think I hear you saying, but you can correct me if I'm misunderstanding, is that Judge Umphress has to subject himself to some sort of action by the commission in order to test this overall question. He doesn't have to. His conduct is his own choice. But what I'm saying here is that what he's asking for is an advisory opinion. And this is apparent. Declaratory judgment. There's a difference between advisory opinion. As you know, when the Declaratory Judgment Act was enacted, there was a lot of question about whether it was an advisory opinion and not valid under the Constitution. But that was settled a long time ago. But he does acknowledge in his briefing at the trial level and it here that Canon 4A1 can be applied in situations where there are very negative statements about gays, gay marriage, and the whole thing. And he made clear that 4A1 can be applied. So therefore, his facial challenge goes away because he starts out saying it can't be applied against anybody. What he asked for is, he said, I want direction. I want direction in this declaratory judgment about what of these five or six findings against Judge Hensley could be taken out and therefore allow her to proceed without a sanction to marry heterosexual but not gay couples. The second thing he asked for is, tell me what I can do, which is the same thing that he said, tell me what I can do. This is an advisory opinion that no adjudicative agency or court should engage in. You must hear the facts, apply the law to the facts. It would be similar to what happened in that Senegin versus Smith case. The United States Supreme Court took up the Ninth Circuit and said, wait a minute, you can't go out and say, I don't like the issues brought by this person who was convicted in the trial court of fraud involving applications for immigration. You can't say, I don't like these issues, so you appoint a me guy who will go out and look at those issues and bring it to court and then argue those issues which were not raised. So in an advisory opinion, that's an extreme situation, but that is what he asked for. Page 12 to 14 in his reply brief, it's very, very clear. He also acknowledges in his opening brief at page 26 that the speech first case that dealt with the students at UT, those students, yes, have substantive rights, and it was correct for the trial court in this case to distinguish between those rights and those that a judge has. Because judges, by virtue of position, as we all know, are subject to ethics, the code of judicial conduct. On the question of injury, you agree with Mr. Mitchell that the commission hasn't declared that it will not seek to enforce Canon 4A1 against Judge Ambrose. It hasn't made any declaration along those lines. No, Your Honor, they have not. And with respect to counsel, I think that's a red herring. Because I think there have been cases that have addressed that. In some cases where the prosecutor, and this would be a prosecutor, has said, for instance, Doe versus Belton, well, you know, we don't know if we're going to come after them or not. And but that's not a point because an adjudicative body should not say we're going to come after you or we're not. Now, prosecutors, that may be a different story, but not a fact-finding judicial in nature administrative agency. So the public warning in connection with Judge Hensley, did that result from a citizen complaint or was the commission just proactive in issuing that public warning? I believe that arose because a staff member saw an article in the Waco newspaper where Judge Hensley had given an interview where she espoused her position and that she would not marry same-sex couples, but she would marry heterosexual couples in her capacity as the justice of the peace. So it indeed is possible, always possible, that is within their authority. But let me also point out, this is not a cottage industry that's going on or would go on, as far as the record shows, at the commission. Jacqueline Haversam, the executive director of the commission, in her second declaration said, look, besides this case against Judge Hensley, where we sanctioned her, there are two other cases where there's been a complaint made where one of the factors, not the sole factor, but one of the factors has to do with the choice of the judge to marry heterosexual but not homosexual couples. That has not gone forward at this point and no hearing is set. So the allegations that are all over the complaint and all over the brief about threatening and bullying by the commission are just out of line. They're an attempt to amp up this so-called fear and it just is not right because they've also alleged that Congress... She was sanctioned for these things. She gave the interview in the Waco paper about the fact that she believed marriages between one man and one woman, that she would not marry gay couples and so on. She... She was sanctioned for that. That's not speculative. That was one of the things. Then Judge Hensley performed opposite-sex weddings but declined to same-sex weddings. She also used her court staff, two people on her staff at the Justice Peace Court in asking that Judge Hensley marry and said, nope, she doesn't. She won't do it. She has deep-seated feelings about this and here's some other places you can go. Then Judge Hensley also told the Waco Tribune, the public and the commission that her conscience prohibited, her religious conscience prohibited same-sex weddings and in her appearance, and this is important, before the commission, she specifically said, yes, if there were a motion to recuse brought to me because of my views on same-sex marriage and what I have been doing, I would recuse. So she clearly understood what the problem was and on that basis, she received this public warning. Thank you, counsel. Your Honor, on the issue of Pullman abstention, the Supreme Court in the cases of this court have instructed courts to weigh the constitutional rights being asserted against any costs that might result from abstention in terms of delay and likelihood of reaching a decision in the state courts that might obviate the need for a federal constitutional ruling. It's a balancing test and here the balance tips decisively against Pullman abstention. To begin, the federal constitutional rights that are being asserted in this case are of the utmost importance. Regardless of what the court may think of the merits of these claims, the significance of them is undisputed. The right under the First Amendment, the speech clause, the right of free exercise of religion, the vagueness attacks that are being made on this canon in a manner that alleges a chilling effect on speech and religious freedom. And then at the same time, the likelihood that a state court will ultimately be able to resolve the merits of Judge Hensley's lawsuit in a way that would obviate the need for a federal court ruling on the First Amendment questions are exceedingly small. As Judge Owen pointed out, Judge Seufer and the Travis County District Court would not even reach the merits of Judge Hensley's Texas RFRA claim because she dismissed the case on multiple independent procedural grounds. And even if the Austin Court of Appeals were to reverse that ruling, that would not protect Judge Offriss because the Austin Court of Appeals is a regional court whose rulings do not have statewide effect. And the amount of time it would take even to get this issue to the state Supreme Court on the assumption that the state Supreme Court would grant a PFR would create additional years of unacceptable chilling effects, not only on the speech rights of Judge Offriss, but on the speech rights of every judge and justice of the peace in the state judicial system. With respect to the issue of Article III standing, Justice Lange repeatedly accused us of seeking an advisory opinion from this court. But there is a well-settled test for distinguishing a permissible request for declaratory judgment from an impermissible request for an advisory opinion. It's the three-part test the Supreme Court set forth in Susan B. Anthony v. Dryas, and it was the same test that this court applied in speech first. First, the court must ask whether the plaintiff intends to engage in conduct that is arguably affected with a constitutional interest. Second, the court must ask whether the plaintiff's conduct is arguably prescribed by the statute of regulation in question. And third, the court must ask whether there is a threat of future enforcement that is either credible or substantial. If Justice Lange wants to accuse us of seeking an advisory opinion, he needs to explain how we have failed to satisfy that three-part test. And in like manner, the district court needed to explain in its opinion how Judge Umphress failed to meet each of these three requirements. The first two are easy, and I think essentially undisputed. Clearly, Judge Umphress is engaging in conduct that is at least arguably protected with a constitutional interest. And certainly, given what the commission did to Judge Hensley, Canon 4A1 arguably prescribes what Judge Umphress intends to do. The only real issue of dispute between the parties is whether the threat of future enforcement is sufficiently credible or sufficiently substantial to warrant a pre-enforcement challenge. And for the reasons we set forth in our brief, it is, because the commission has already disciplined Judge Hensley for engaging in conduct that is essentially indistinguishable from what Judge Umphress wants to do. But you'll agree that in Susan B. Anthony, you had a lot more occurrences of some kind of an enforcement action in that case that we have here. That may be right, Judge Graves. But again, we're still just at the pleading stage. And we have not taken discovery. We have not yet asked the commission to disclose the number of times it has investigated or disciplined other judges over the issue of same-sex marriage recusals. And not all commission discipline is made public. So I'm not prepared at this point, Judge Graves, to concede that all we have to go on is the disciplinary action that was committed against Judge Hensley. Because there may be more out there. We're just at the motion-to-dismiss stage on 12B6 and 12B1. So yes, Your Honor is correct to point out there was a lot more in Susan B. Anthony. But it's still possible there may be more here once we get to discovery. So I don't think it's quite fair at this point to say that we're not quite in the same league as Susan B. Anthony. But regardless, the test is the same. And that test needs to be applied. And the district court did not apply that test here. And if Your Honors have further questions, I'm happy to answer them. But otherwise, we'll rest on our brief and our argument. Thank you, Ken. Thank you. The court will take a brief recess.